On July 18, 1997, plaintiff, Della Jules-Bryant, instituted this action against defendant, Neoprobe Corporation, asserting claims for racially discriminatory firing, racially discriminatory treatment, and retaliatory firing. On April 24, 1998, defendant moved for summary judgment on each of the claims set forth in plaintiff's complaint. Defendant's motion was granted on June 10, 1998. Plaintiff now appeals, raising the following assignments of error:
 [I.] The trial court erred in granting summary judgment dismissing Della Jules Bryant's claim arising out of her discharge in retaliation for raising issues of racial discrimination.
 [II.] The trial court erred in granting summary judgment dismissing Della Jules Bryant's claim arising out of her racially discriminatory firing.
 [III.] The trial court erred in dismissing Della Jules Bryant's claims concerning racially discriminatory treatment while she worked at Neoprobe Corporation on the theory that such claims are barred by the statute of limitations.
The uncontested facts of this matter are as follows. Defendant is a biotechnological company that is currently developing an instrument used to detect the presence of cancer cells in the human body. In April 1994, plaintiff began working with defendant as a temporary clerical assistant through the Dawson Personnel Agency. Within a short while, plaintiff learned that a permanent clerical position had become available in defendant's clinical trials department. As a result, plaintiff approached defendant's Human Resources Manager, Susan Gaunce, and expressed her interest in applying for the permanent clerical position. Upon Ms. Gaunce's recommendation, plaintiff began work in the clinical department on a trial basis reporting to Cindy Zak, Neoprobe's Clinical Coordinator. After approximately three months as a probationary employee, plaintiff was offered a full time position in the clinical department. Plaintiff's job duties were largely secretarial in nature and consisted of typing, filing, taking messages, and photocopying.
As expected, the parties differ in their characterization of the events which precipitated the filing of this action. The first point of disagreement concerns plaintiff's initial performance evaluation. On October 28, 1994, a written job evaluation was completed which plaintiff characterizes as "favorable," and which plaintiff claims established that she was "fully capable of performing all aspects of her job" at Neoprobe.
In contrast, defendant contends that plaintiff's unsatisfactory job performance was in fact documented during the course of her first evaluation. According to defendant, soon after plaintiff became a full time employee, she was faulted for her failure to complete assigned tasks, excessive socializing during working hours, delays and inconsistencies in completing job tasks, tardiness, and absenteeism.
According to plaintiff, after her October evaluation, all seemingly went well. Plaintiff states that she was advised that her job performance was satisfactory, that she did not receive criticism relating to her job performance, and that she was initially permitted to participate in defendant's tuition reimbursement program available only to employees who were performing their jobs to defendant's satisfaction. In the fall of 1994, however, plaintiff claims that her request for tuition and seminar reimbursement was denied, although the requests of similarly situated white employees were granted.
Not long thereafter, plaintiff stated that the employment of Dr. Hazle Shorter, Neoprobe's most senior black employee, was terminated. Apparently Dr. Shorter's termination coincided with the filing of race discrimination claims with the United States Equal Protection Employment Opportunity Commission ("EEOC") by Dawn Allen and Ernie Orso, two other black individuals employed by Neoprobe. On May 4, 1995, plaintiff joined Ms. Allen and Mr. Orso and filed race discrimination charges with the EEOC. It was after her charge was filed with the EEOC that plaintiff claims her job was first threatened.
In defendant's eyes, plaintiffs job performance declined significantly after her October 1994 evaluation. As set forth by defendant, plaintiff's supervisor met with plaintiff on several occasions to discuss plaintiff's deteriorating performance, including her failure to complete assigned tasks, excessive socializing, tardiness, absenteeism, and failure to properly file documents. On June 28, 1995, plaintiff received a second performance evaluation in which she was rated "marginal" for work quality, "unsatisfactory" for work quantity, judgment, job knowledge, attendance, attitude, initiative and adaptability. As a result of her alleged deteriorating performance, plaintiff was placed on probation and was provided an outline of specific areas in which she would have to improve her performance by July 7, 1995. According to defendant, plaintiff's substandard performance continued despite constructive counseling. Finally, defendant contends that plaintiff's employment was terminated on July 20, 1995 for good cause.
On August 10, 1995, plaintiff filed a second charge of racial discrimination with the EEOC alleging that she was terminated on account of her race and in retaliation for filing a previous charge of discrimination. Ultimately, the EEOC issued determinations dismissing both charges against defendant. On July 18, 1997, plaintiff initiated this action in the Franklin County Court of Common Pleas. As noted, the trial court granted to defendant summary judgment, leading to this appeal.
The criterion for granting summary judgment is contained in Civ.R. 56(C), which provides:
 * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *
As set forth in Civ.R. 56(C), a party moving for summary judgment must establish the lack of a genuine issue of material fact concerning the essential elements of his or her opponent's case. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Succinctly, viewing all facts in a light most favorable to the non-moving party, the moving party must show that the evidence does not present a sufficient disagreement to require submission of the case to a jury. Turner v. Turner (1993),67 Ohio St.3d 337, 340. Although the court is obligated to view the facts in a light most favorable to the non-moving party,Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, when a properly supported motion for summary judgment is made, the non-moving party is not permitted to rest upon the mere allegations or denials contained in his or her pleading, but must come forth with specific facts showing the existence of a genuine issue for trial. Civ.R. 56(E). The non-moving party need not try the case at this level, but must produce more than a scintilla of evidence in support of the claims.
Having construed the evidence in a light most favorable to plaintiff, we are not persuaded that the evidence mandates judgment in defendant's favor. Accordingly, we believe the trial court erred in granting defendant's motion for summary judgment.
Plaintiff maintains that she was the subject of racial discrimination while employed by Neoprobe. Racial discrimination in employment is prohibited by R.C. 4112.02(A). This section provides:
It shall be an unlawful discriminatory practice:
 (A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
The Ohio Supreme Court has adopted the test for establishing a prima facie case of discrimination set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green
(1973), 411 U.S. 792. Kohmescher v. Kroger Co. (1991), 61 Ohio St.3d 501,504. Although the McDonnell Douglas formula was initially developed in response to allegations of racial discrimination in hiring, both federal and Ohio courts have found the formula to be flexible enough to be applied to fit varying factual allegations and have modified the formula when appropriate.
In general, a prima facie case of racial discrimination under the McDonnell Douglas framework requires a plaintiff to establish that he or she: (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position either lost or not gained; and (4) that the position remained open or was filled by a person not of the protected class. McDonnell Douglas, at 802. The establishment of a prima facie case of discrimination under McDonnellDouglas creates a presumption that the employer unlawfully discriminated against the employee. Texas Dept. of CommunityAffairs v. Burdine (1981), 450 U.S. 248, 254. In Mauzy v. KellyServices, Inc. (1996), 75 Ohio St.3d 578, 583-587, the Ohio Supreme Court explained:
 In order to prevail in an employment discrimination case, the plaintiff must prove discriminatory intent. * * *
 The function of the McDonnell Douglas prima facie test is to allow the plaintiff to raise an inference of discriminatory intent indirectly. * * *
 As the Supreme Court explained in Furnco Constr. Corp. v. Waters (1978), 438 U.S. 567:
 'A prima facie case under McDonnell Douglas raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. * * *'
 Thus, McDonnell Douglas is one method, an indirect method involving the process of elimination, whereby the plaintiff may create an inference that an employment decision was more likely than not based on illegal discriminatory criteria. The process of elimination, however, is not the only method by which such an inference may be created. * * *
* * *
 * * * [A] plaintiff may establish a prima facie case of * * * discrimination directly by presenting evidence, of any nature, to show that the employer more likely than not was motivated by discriminatory intent.
Once a plaintiff establishes a prime facie case of discrimination, the burden shifts to the defendant who must articulate some legitimate non-discriminatory reason for the action taken. Thereafter, the burden again switches to the plaintiff, who must show that defendant's stated justification is in fact merely a pretext for unlawful discrimination.
In her first and second assignments of error, plaintiff argues that the trial court erred when it granted defendant summary judgment on plaintiff's retaliatory discharge and racially discriminatory firing claims. The issue which has been briefed and argued on appeal focuses on the third element of the McDonnell Douglas test. Specifically, plaintiff argues that the trial court erred in finding that plaintiff had not come forward with evidence sufficient to raise a genuine issue of fact as to defendant's proffered non-discriminatory reason for plaintiff's termination. Having considered the evidence in a light most favorable to plaintiff, we are of the opinion that plaintiff has demonstrated the existence of a genuine issue of material fact for trial.
As noted, defendant contends that plaintiff was terminated as a result of her "continuous unsatisfactory work performance." However, the fact that plaintiff's employment was terminated within a very short time after she filed a discrimination charge with the EEOC, is significant when combined with plaintiff's pre-filing evaluation and the deposition testimony of plaintiff, Cindy Zak, Susan Guance, and others that, when construed in a light most favorable to plaintiff, are sufficient to demonstrate that plaintiff's job performance was in fact satisfactory, and that plaintiff's job was not in jeopardy prior to the time of plaintiff's complaint to the EEOC. Susan Gaunce stated during the course of her deposition that, with minor exceptions, plaintiff received positive performance evaluations until after the filing of plaintiff's first complaint with the EEOC. The same was expressed by plaintiff and Cindy Zak during the course of their depositions. As noted by the United States Supreme Court in St. Mary's HonorCenter v. Hicks (1993), 509 U.S. 502, 511:
 The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, "[n]o additional proof of discrimination is required" * * *.
In this case, the evidence offered to rebut defendant's proffered nondiscriminatory reason for plaintiff's termination is not overwhelming. However, viewing all evidence in plaintiff's favor, we find that the timing of plaintiff's probation and termination, which occurred soon after plaintiff filed a charge of discrimination with the EEOC, raises an issue of fact for trial. Accordingly, plaintiff's first and second assignments of error are sustained.
In her third assignment of error, plaintiff argues that the trial court erred when it found that the alleged discriminatory acts which occurred prior to July 18, 1995 were barred by the two-year statute of limitations set forth in R.C. 4112.99.
As originally drafted, R.C. 4112.99 did not contain a statute of limitations. As such, in Cosgrove v. Williamsburg ofCincinnati Mtg. Co., Inc. (1994), 70 Ohio St.3d 281, the Ohio Supreme Court established a six-year statute of limitations for discrimination claims pursuant to R.C. Chapter 4112. However, on January 27, 1997, the time within which to file actions pursuant to R.C. 4112.99 was reduced by the General Assembly to two years. In her brief, plaintiff argues that the trial court erred when it applied the two-year statute of limitations to her claims, and not the six-year period set forth in Cosgrove.
In opposition, defendant argues that the new limitation period set forth in R.C. 4112.99 should be applied to plaintiff's claims even though those claims arose prior to January 27, 1997. In support of its proposition, defendant relies upon Cookv. Matvejs (1978), 56 Ohio St.2d 234, arguing that statutes of limitations are generally regarded as affecting procedural rather than substantive rights and, thus, may be applied retroactively. Although a correct statement of the law, we do not believe Cook applies to the case at bar.
A statute is presumed to be prospective in its operation unless expressly made retrospective. R.C. 1.48. In this case, the issue of whether R.C. 4112.99 may be retrospectively applied does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply. State v. Cook (1998), 83 Ohio St.3d 404. In this case, however, we find no evidence that the General Assembly so specified. Without a clearly expressed legislative intent that R.C. 4112.99 be applied retrospectively, we must reverse the trial court's application of the two-year filing period in R.C. 4112.99 to plaintiff's claims which arose prior to the effective date of that section. Accordingly, plaintiff's third assignment of error is sustained.
Having reviewed the record, we believe that the trial court erred when it concluded that summary judgment in defendant's favor was warranted. As such, the judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court for further proceedings consistent with this opinion and in accordance with the law.
Judgment reversed; cause remanded.
KENNEDY and DESHLER, JJ., concur.